UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                                    :
CHERYL D. WAITERS                                   :
                                                    :        CASE NO. 1:08-cv-2006
                        Plaintiff,                  :
                                                    :
vs.                                                 :        OPINION & ORDER
                                                    :        [Resolving Docs. Nos. 15, 19.]
CITY OF CLEVELAND                                   :
                                                    :
                        Defendant.                  :
                                                    :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Defendant City of Cleveland moves this Court for summary judgment in this employment

discrimination and retaliation case.  [Doc. 15.]  Plaintiff Cheryl Waiters opposes the motion.  [Doc.

18.]  The Defendant has replied.[1/]  [Doc. 19.]  For the following reasons, the Court **GRANTS** the

Defendant's motion for summary judgment.

## I.  Background

With her complaint, Plaintiff Cheryl Waiters alleges that the Defendant City of Cleveland

discriminated against her on the basis of sex and race and retaliated against her because of her

participation in protected activities and her opposition to unlawful practices.  Plaintiff Waiters says

this discrimination violated Title VII of the Civil Rights Act of 1964 ("Title VII").  [Doc. 1.]

The City of Cleveland ("City") employed Waiters at Hopkins International Airport ("the

---

[1/]With its reply, the City of Cleveland also moves the Court to strike the Plaintiff's Brief in Opposition because
it "does not rely on any evidence in the record nor are any of the assertions and claims supported by affidavits or
admissible evidence." [Doc. 19 at 5.] In response, Plaintiff Waiters filed an affidavit attesting to the veracity of the facts,
statements, and evidence presented in her filings. [Doc. 20 at 1.] Because the Plaintiff's claims fail on the merits, even
construing all evidence in her favor, the Court **DENIES** the motion to strike as moot.

Case No. 1:08-CV-2006
Gwin, J.

Airport") as an electrician from April 5, 1999 until June 8, 2007. [Id.]  Waiters alleges that the City

discriminated against her in regard to work assignments, discipline, benefits available under the

Family Medical Leave Act ("FMLA"), termination, and promotion. [Id.] Additionally, she claims

the City retaliated against her for her protected activities under Title VII, through work assignments,

discipline, denial of FMLA benefits, and failure to promote.[2/]  [Id.] Finally, Waiters complains that

she was wrongfully terminated. [Id.]

Waiters, an African-American woman, is a member of the International Brotherhood of

Electrical Workers, Local 38.  [Doc. 1 at 1.] The City disciplined Waiters several times during her

employment at the Airport before finally terminating her.  [Doc. 18 at 2, 5-6.]  The first relevant

discipline occurred on May 31, 2006.  On that date, the Airport's Commissioner suspended Waiters

for one day for violation of the Rules of the Civil Service.  The City held a pre-disciplinary hearing

on May 23, 2006, and found that Waiters had used profanity toward a co-worker on May 16, 2006.

[Doc. 15 at 15.]  The second discipline occurred on October 12, 2006.  After a pre-disciplinary

hearing, the City placed Waiters in its Sick Abuse program for exceeding 30 hours of sick time

within a quarter.  [Id. at 15-16.]  The third discipline came on January 17, 2007.  The City held a pre-

disciplinary hearing and found that Waiters had violated the conditions of the Sick Abuse program

by not providing a doctor's note after calling in sick on January 4, 2007.  Waiters arrived at work

at 9:30am on that day.  The City contends this behavior was an effort to avoid both the City's

Absence Abuse program and the Sick Abuse program.  [Id. at 16.]  Waiters says she simply called

in late and has provided an office note that supports this assertion. [Docs. 18 at 6, 18, Ex. K.] The

fourth discipline occurred on February 23, 2007.  After a pre-disciplinary hearing, the City suspended

---

[2/]Waiters does not include a claim that the City retaliated against her by terminating her.

Case No. 1:08-CV-2006
Gwin, J.

Waiters for three days for "Conduct Unbecoming an Employee in the Public Service" and "Insubordination." The City found that Waiters had refused over a period of three days to install a heater as requested. [Doc. 15 at 17.] Waiters says the installation required two workers. [Doc. 18 at 6.]

After a pre-disciplinary hearing on May 25, 2007, the City terminated Waiters on June 8, 2007. The City found that Waiters had violated its Workplace Violence Policy and the Rules of the Civil Service. The pre-disciplinary hearing and termination were in response to allegations made by Carol Westerfield, an acquaintance of Waiters. Westerfield reported to the City that Waiters had a gun and had threatened to use it to harm Airport employees. [Doc. 15 at 17.] Westerfield maintains that Waiters showed her the gun and repeated the threats on Westerfield's voicemail. [Id. at 18.] Waiters claims Westerfield lied because Waiters had brought a lawsuit against her. [Doc. 18 at 6.]

Waiters has filed numerous charges with the Equal Employment Opportunity Commission ("EEOC").[3/] Waiters filed Charge 532-2007-00733 on February 9, 2007, alleging sex discrimination and retaliation involving the discipline she received between May 2006 and February 2007. [Doc. 18, Ex. D at 6.] Waiters amended this charge on June 19, 2007 to include her termination. [Id. at 7.] Waiters also filed Charge 532-2008-01053. Waiters submits an unsigned copy of the Charge form that claims a denial of promotional opportunities due to her sex, race, and retaliation. It does not have a date of filing but says the discrimination occurred on April 15, 2008. [Id. at 8-9.] The City says Waiters filed Charge 532-2008-01053 on April 30, 2008. [Doc. 15 at 13.] Waiters responds that she filed this charge earlier, but an EEOC intake officer amended it and changed the date. [Doc. 18

---

[3/]These charges were filed in 1996, 1999, 2000, 2007, and 2008. Waiters has not identified on which EEOC Charges she bases this suit. Because the Complaint alleges events described in Charge 532-2007-00733 and Charge 532-2008-01053, and the previous charges were filed more than five years ago, the Court will focus on the allegations in these two charges.

Case No. 1:08-CV-2006
Gwin, J.

at 2.] On July 16, 2008, the EEOC dismissed Charges 532-2007-0073 and 532-2008-01053. [Doc. 18, Ex. E at 4.] Waiters subsequently filed this lawsuit on August 12, 2008, alleging that the City discriminated against her in work assignments, discipline, denial of FMLA benefits, termination, and promotions because of her race and sex, and in retaliation for protected activities. [Doc. 1.]

## II.  Legal Standard

Summary judgment is appropriate where the evidence submitted shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  "A fact is material if its resolution will affect the outcome of the lawsuit."  *Martingale, LLC v. City of Louisville,* 361 F.3d 297, 301 (6th Cir. 2004) (citing *Daughenbaugh v. City of Tiffin,* 150 F.3d 594, 597 (6th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986))).

The moving party meets its burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323 (quoting FED. R. CIV. P. 56(c)). However, the moving party is under no "express or implied" duty to "support its motion with affidavits or other similar materials negating the opponent's claim." *Id.*

Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  It is not sufficient for the nonmoving party merely to show that there is

-4-

Case No. 1:08-CV-2006
Gwin, J.

some existence of doubt as to the material facts.  *See id.* at 586.  Nor can the nonmoving party rely

upon the mere allegations or denials of its pleadings.  FED. R. CIV. P. 56(e).

In deciding a motion for summary judgment, the Court views the factual evidence and draws

all reasonable inferences in favor of the nonmoving party.  *Thomas v. Cohen,* 453 F.3d 657, 660 (6th

Cir. 2004) (citations omitted).  "The disputed issue does not have to be resolved conclusively in

favor of the non-moving party, but that party is required to present some significant probative

evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial."  *60*

*Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz.*

*v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968)).  Ultimately the Court must decide "whether the

evidence presents sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law."  *Martingale,* 361 F.3d at 301 (citing *Terry*

*Barr Sales Agency, Inc. v. All-Lock Co., Inc.,* 96 F.3d 174, 178 (6th Cir. 1996)) (internal quotations

omitted).

### III.  Discussion

With her Complaint, Waiters raises the following claims: (1) sex and race discrimination;

(2) retaliation; (3) hostile work environment; and (4) wrongful termination.  [Doc. 1.]  The City

seeks summary judgment in its favor on all claims.  [Doc. 15.]

#### A. Sex and Race Discrimination Claim

A plaintiff can establish a prima facie disparate treatment case for sex or race discrimination

under Title VII by introducing direct evidence of discrimination or by using the *McDonnell Douglas*

paradigm to infer discrimination from circumstantial evidence.  *See McDonnell Douglas Corp. v.*

*Green,* 411 U.S. 792, 802  (1973); *see also Kline v. Tenn. Valley Auth.,* 128 F.3d 337, 349 (6th Cir.

Case No. 1:08-CV-2006
Gwin, J.

1997). "Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Tepper v. Potter,* 505 F.3d 508, 516 (6th Cir. 2007) (citations omitted). Such evidence "does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Id.*

To establish a prima facie case of discriminatory disparate treatment using the *McDonnell Douglas* paradigm, a plaintiff must show that: (1) she was a member of a protected class at the time of the discrimination; (2) she suffered an adverse employment action; (3) she was qualified for her position; and (4) she was treated differently than a similarly situated, non-protected employee. *Wright v. Murray Guard*, 455 F.3d 702, 707 (6th Cir. 2006).

An adverse employment action is one that changes the terms of employment in a way that is materially adverse to the plaintiff. *Wills v. Pennyrile Rural Elec. Coop. Corp.,* 259 Fed. Appx. 780, 783 (6th Cir. 2008).

> [A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999) (quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993)).

A similarly situated employee is one who has the same supervisor, was subject to the same standards of conduct, and engaged in "nearly identical" conduct, without differentiating or mitigating circumstances that would distinguish the employee's conduct or the employer's response. *Mallory v. Noble Corr. Inst.*, 45 Fed. Appx. 463, 471-72 (6th Cir. 2002); *Pierce v. Commonwealth Life Ins.*

-6-

Case No. 1:08-CV-2006
Gwin, J.

*Co.*, 40 F.3d 796, 802 (6th Cir. 1994). The Sixth Circuit has instructed that courts "should not demand exact correlation, but should instead seek relevant similarity." *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000) (holding that employees were similarly situated when they were charged with the same duties and had the same supervisor). When a plaintiff is accused of violating company policies, as in the case of Waiters' discipline and termination, the question is whether the employer has a rational reason for treating the plaintiff differently. When employees engage in different conduct, they are not similarly situated because the employer would be rational in disciplining them differently. *See, e.g.*, *Palmer v. Potter*, 97 Fed. Appx. 522, 524-25 (6th Cir. 2004); *Hardy v. Eastman Chem. Co*., 50 Fed. Appx. 739, 743 (6th Cir. 2002).

Waiters, an African-American woman, has alleged that the City discriminated against her because of her sex and race in work assignments, discipline, FMLA benefits, termination, and promotion. [Doc. 1 at 1-2.] Because Plaintiff does not provide direct evidence of sex or race discrimination, the Court applies the *McDonnell Douglas* framework.

*1. Work Assignments*

In her complaint, Waiters says that she "was discriminated against in work assignments and made to suffer a pattern of harassment because of Plaintiff's sex, race and outspokenness regarding workplace unfairness." [Doc. 1 at 2.] In her opposition to summary judgement, Waiters adds that her "work assignments were excessive and unusual." [Docs. 1 at 2, 18 at 6.] She describes her work assignments in detail in only two instances. Waiters says she "was ordered to push a 750lb Portable manlift for three days across the roof of the parking garage by herself and suffered [a resulting] S.I. joint injury" and that "when the males are required to do the same job they used a drivable articulating lift. Also when the Portable manlift is used by the males two of them work together

-7-

Case No. 1:08-CV-2006
Gwin, J.

pushing the lift." [Doc. 18 at 6.] Regarding the fan installation that she was disciplined for not

completing, Waiters claims it required two people and was subsequently completed by two males.

[Id.]

These allegations of "excessive" work assignments are insufficient to support a prima facie

case of disparate treatment.  Two incidents in which the Plaintiff was asked to perform a duty alone

do not constitute a materially adverse change in the terms and conditions of employment.  Because

Waiters does not demonstrate that she suffered and adverse employment action, she cannot establish

a prima facie case of discrimination through work assignments.

*2. Discipline*

Waiters says that she was disciplined in a discriminatory fashion.  In her opposition to

summary judgment, Waiters asserts that the discipline she received was not justified and was not

applied to others.  In regard to her one day suspension for an outburst of foul language, she denies

that she used the word "fuck" and observes that this word was written on trash cans in the work area.

[Doc. 18 at 5.]  Waiters also says that the City did not punish her fellow employee, Kevin Smith,

for similar behavior.  [Id.] The Plaintiff submits a complaint written by a fellow employee regarding

Mr. Smith's language and asserts that, although she received a one-day suspension, the City merely

asked Smith to apologize.  [Id., Doc. 18, Ex. I.]  Waiters also says that the City wrongly placed her

in the Sick Abuse program: she was injured from a work assignment for some of the days and called

in late, not sick, on one specific day.  [Doc. 18 at 6.] Additionally, the City disciplined Waiters for

failing to complete a work order.  She contends that the assignment required two people and that the

City did not provide the necessary supplies.  [Id.]  The City counters that all of these incidents of

discipline were warranted, that Waiters was given a hearing for each, and that other employees were

Case No. 1:08-CV-2006
Gwin, J.

disciplined similarly. [Doc. 15 at 15-17.] In particular, the City notes that it has disciplined three of the eight other electrical workers at the Airport for excessive absenteeism, offensive language while on duty, and being absent without leave. [Id. at 18.]

Although Waiters identifies one other employee, Kevin Smith, about whom a complaint was filed, the Plaintiff does not offer any context to explain how Smith is similarly situated except that both were accused of using the word "fuck."  It is unclear whether the City held a pre-disciplinary hearing on Smith's infraction or whether Smith was found to have used the word.  Further, Waiters was accused of becoming enraged and repeatedly using the word. [Doc. 15 at 15.] While Waiters denies ever using the word – and the Court construes the facts in her favor – the evidence shows the two were at least *accused* of different behavior.  With respect to the other discipline she faced, Waiters provides no similarly situated employees.  Because Waiters has not shown that similarly situated unprotected employees were treated differently, she has not established a prima facie case of discriminatory discipline.

*3. FMLA Benefits*

Waiters says that the City unfairly denied her access to benefits under the Family Medical Leave Act ("FMLA") because of her sex and in retaliation for her protected Title VII activities. [Doc. 1 at 2.] Waiters has not provided any evidence that similarly situated non-protected employees were granted FMLA benefits.  Therefore, she has not established a prima facie case of disparate treatment.

*4. Termination*

Waiters also claims that the City discriminated against her by terminating her because of her

-9-

Case No. 1:08-CV-2006
Gwin, J.

sex.[4]  [Doc. 1 at 1.]  Termination would qualify as an adverse employment action.  However, the

Plaintiff has not established a prima facie case because she has not presented similarly situated males

who were treated differently.

*5. Promotion*

In a discrimination claim based on a failure to promote, the plaintiff bears the initial burden

of establishing that she: (1) is a member of a protected class; (2) applied and was qualified for a

promotion; (3) was considered for and denied the promotion; and (4) other employees of similar

qualifications who were not members of the protected class received promotions.  *Ledbetter v.*

*Gilley,* 385 F.3d 683, 690 (6th Cir. 2004) (citations omitted).

Waiters claims that because of her sex, race, and her filings with the EEOC, she was denied

a promotion to foreman after passing the City's Electrical Unit Leader Test.[5] [Doc. 1 at 2.]  The City

---

[4] The Plaintiff makes no claim that the City discriminated against her by terminating her because of her race
or in retaliation for her protected activities. [Doc. 1 at 1.]

[5] The City says this claim should be dismissed because Waiters did not file the Charge with the EEOC within
300 days of the complained incident.  [Doc. 15 at 13.]  Section 706 of 42 U.S.C. § 2000e-5 requires that charges brought
under the section:

> shall be filed within one hundred and eighty days after the alleged unlawful employment practice
> occurred...except that in a case of an unlawful employment practice with respect to which the person
> aggrieved has initially instituted proceedings with a State or local agency with authority to grant or
> seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving
> notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred
> days after the alleged unlawful employment practice occurred, or within thirty days after receiving
> notice that the State or local agency has terminated the proceedings under the State or local law,
> whichever is earlier...

Thus, Waiters had 300 days at most after the unlawful employment action to bring charges with the EEOC.  Waiters'
EEOC Charge of Discrimination 532-2008-01053 alleges a denial of promotional opportunities based on race, sex, and
retaliation and lists the date of discrimination as April 15, 2008.  It does not have a date of filing or a signature.  [Doc.
18, Ex. D at 8-9.]  The Dismissal and Notice of Rights for this charge was issued July 16, 2008.  [Doc. 15, Ex. C at 3.]
However, the City terminated Waiters' employment on June 8, 2007 – *the previous year*.  Regardless if the charge was
filed on April 30, 2008 (as the City alleges) or April 15, 2008 (the earliest possible date suggested by the charge), it
would have been filed more than 300 days after the end of Waiters' employment.  Waiters says, in her opposition to
summary judgment, that an EEOC intake officer amended past complaints with the understanding that the original
complaints would stay intact. [Doc. 18 at 2.]  Based on these facts, the claim appears to be time-barred.  However, without
deciding the issue, the Court will continue to consider the merits of the claim.

Case No. 1:08-CV-2006
Gwin, J.

says Waiters fails to establish a prima facie case of discriminatory failure to promote because she has provided no evidence that unprotected employees were promoted when she sought promotion. [Doc. 15 at 13.] Waiters states that a white male was promoted to foreman eight months after being hired in April 2005. [Doc. 18 at 4.] Waiters does not present evidence, however, that she applied for the position.  The earliest indication of her qualification and application for promotion is the civil service exam in 2006.  [Doc. 15, Ex. F at 73.] The City deemed Waiters eligible for the position of electrical worker unit leader May 12, 2006, after she took the examination.  Waiters says that after this exam the City demoted the white male who had recently been hired and promoted, and Foreman Fred Mack told the City's EEO Officer that there were only two foreman positions. [Doc. 18 at 5.] Waiters does not allege that the City promoted anyone after she became eligible in May 2006.

Thus, Waiters has not shown that she was qualified for promotion in 2005, when another employee was promoted.  Nor has she shown that anyone outside the protected group was promoted after 2006, when she qualified.  Therefore, she has not established a prima facie case of discriminatory failure to promote.

### B. Retaliation

Title VII prohibits retaliatory actions against employees who oppose, report, or participate in investigations involving conduct that allegedly violates Title VII.  *See* 42 U.S.C. § 2000e-3(a). Because the Plaintiff relies on circumstantial evidence, the *McDonnell Douglas* paradigm again applies.  To establish a prima facie case, a plaintiff must show that (1) she engaged in a protected activity; (2) the employer knew about the protected activity; (3) the employer discriminated against her in a materially adverse way; and (4) there was a causal connection between the protected activity and the employer's action.  *Smith v. City of Salem*, 378 F.3d 566, 570 (6th Cir. 2004).  If the plaintiff

-11-

Case No. 1:08-CV-2006
Gwin, J.

meets her burden, then the burden shifts to the defendant to show a legitimate and nondiscriminatory reason for the employer's action.  Then, if the defendant meets its burden, the burden returns to the plaintiff to "demonstrate that the proffered reason was not the true reason for the employment decision." *Lindsay v. Pizza Hut of Am.*, 57 Fed. Appx. 648, 650 (6th Cir. 2003).

The Supreme Court has  noted that Title VII:

> protects an individual not from all retaliation, but from retaliation that produces an injury or harm. . . . [A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

*Burlington Northern & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2414-15 (2006) (internal citations omitted).  This anti-retaliation provision does not protect against "those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* at 2415.

A plaintiff may use temporal proximity between an employer learning of an EEOC charge and an adverse employment action to create an inference of causation.  "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008).  Where some time elapses between the two events, the plaintiff "must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Id.*

Waiters says in her Complaint that the City retaliated against her through work assignments, discipline, denial of FMLA benefits, and failure to promote for reporting and opposing the City's violations of Title VII.  [Doc. 1 at 1-2.] Waiters clearly engaged in protected activity by filing EEOC

-12-

Case No. 1:08-CV-2006
Gwin, J.

claims and the City does not claim ignorance of the filings. Thus, the Court considers the third and

fourth elements to decide whether Waiters establishes a prima facie case of retaliation.

*1. Work Assignments*

Waiters' Complaint alleges that the City discriminated against her in work assignments

because of "outspokenness regarding workplace unfairness." [Doc. 1 at 2.] However, as discussed

above, Waiters does not provide much evidence regarding her work assignments. The only specific

work assignments Waiters describes are the order to push a manlift on October 12, 2006, and the

order to install a heater on February 2, 2007. [Doc. 18 at 6.] Waiters does not provide any evidence

suggesting her work assignments generally, or in these specific cases, were influenced by her

protected actions under Title VII. Both of these incidents occurred over five years after her 2000

EEOC filing and before her February 9, 2007 filing. Therefore, the timing of the specific incidents

does not create an inference of causation. Because Waiters does not provide evidence creating an

inference of causation, she has not established a prima facie case of retaliation through work

assignments.

*2. Discipline*

Waiters complains that the City retaliated against her with "subjective, continuous

discriminatory discipline." [Doc. 1 at 2.] Waiters says, as described above, that the discipline was

unwarranted and was motivated by retaliatory malice. [Doc. 18 at 5-6.] While Waiters claims the

discipline was in retaliation for her EEOC filings, she provides no evidence that would create an

inference of causation. And again, the timing of these employment actions also does not create a

temporal inference of causation. The discipline incidents outlined by Waiters and the City occurred

between May 2006 and February 2, 2007. [Docs. 18 at 5-6, 15 at 15-19.] This period of discipline

Case No. 1:08-CV-2006
Gwin, J.

was several years after the Plaintiff's 2000 filing with the EEOC and before Waiters' February 9,

2007 filing.

*3. FMLA Benefits*

Waiters says in her Complaint that the City "because of plaintiff's sex and retaliation took

'Adverse Action' unfairly denying access to benefits of the Family Medical Leave Act of 1993 to

Plaintiff . . . ." [Doc. 1 at 2.] Denying FMLA benefits could be considered an adverse employment

action, as such a denial might discourage an employee from taking protected action.  While Waiters

has not presented any direct evidence of causation, the timing of the denial creates an inference of

causation.  The City sent Waiters a letter, returning her request for benefits due to inconsistencies,

on February 14, 2007, a mere five days after Waiters' February 9, 2007 filing with the EEOC.  The

City subsequently denied the FMLA request on March 14, 2007.  [Doc. 15, Ex. G at 74.] Based on

this temporal proximity of events, Waiters has established an inference of causation, and thus a

prima facie case of retaliation through denial of the FMLA benefits.

As a result, the burden shifts to the City to show a legitimate and nondiscriminatory reason

for its action.  Both the February 14, 2007 letter returning the FMLA request and the March 14, 2007

letter denying the FMLA request explain that Waiters' doctor inconsistently and incorrectly filled

out the relevant forms.  [Docs. 15, Ex. G at 74, 18, Ex. M at 2.]  The Certification of Health Care

Provider form does have at least some of the inconsistencies described in the February 14, 2007

letter.  Question 7(a) asks: "If medical leave is required for the employee's absence from work

because of the employee's own condition (including absences due to pregnancy or a chronic

conditions), is the employee unable to perform work of any kind?"  Waiters' doctor responded "No.

If condition is severe enough for patient to be off work then no light duty is possible unless otherwise

-14-

Case No. 1:08-CV-2006
Gwin, J.

specified." [Doc. 15, Ex. G at 76.]  Question 7(b) asks "If able to perform some work, is the employee unable to perform any one or more of the essential functions of the employee's job . . . ? If yes, please list the essential functions that the employee is unable to perform."  Waiters' doctor responded: "No. If needed - light duty - based on severity/exacerbation.  Certain duties maybe possible."  [Id.]  These answers contradict one another with regard to whether Waiters could work at all and whether she could perform "light duty" tasks.  These inconsistencies would likely make it difficult for the City to understand the necessary limitations in Waiters' schedule and assignments. The City did not immediately deny Waiters' request, but rather highlighted the inconsistencies and allowed her to resubmit the request.  [Id. at 74.]  These circumstances provide a legitimate, nondiscriminatory reason for the City's ultimate denial of the request.  In her Complaint and opposition to summary judgment, Waiters does not provide any reason to consider this explanation as mere pretext.  Therefore, Waiters has not stated a claim of retaliation through denial of FMLA benefits.

*4.  Promotion*

If the City refused to promote Waiters to the position of foreman because of her EEOC charges and complaints of discrimination, that would qualify as an adverse employment action.  Such a refusal to promote would discourage a reasonable employee from opposing discriminatory practices.  However, Waiters does not establish causation.  No evidence suggests that if she had not made complaints and filed Charges with the EEOC, the City would have promoted her.  The timing of her protected activity and the failure to promote do not create an inference of causation.  Waiters provides EEOC charges from 1996, 1999, 2000, 2007, and 2008. [Doc. 18, Ex. D.] While Waiters says she also complained to City management, she has not provided timing or details of these

-15-

Case No. 1:08-CV-2006
Gwin, J.

complaints.  The City promoted one person in April 2005 and Waiters became eligible for promotion

in May 2006. [Doc. 15, Ex. F at 73, 18 at 4.] Waiters engaged in a pattern of protected Title VII

activities, but presents no evidence of activity close to the promotional period (2005-2006) that

would allow an inference of causality.  In fact, the most recent protected activity at the time of the

promotional period was 2000, five years earlier.  That is too great a gap, and there is no other

evidence of retaliatory conduct to establish causality.  *Mickey*, 516 F.3d at 525.  Because Waiters

does not provide evidence of causation, she has not established a prima facie case of retaliation based

on a failure to promote.

### C.  Hostile Work Environment

To establish a hostile work environment claim, a plaintiff must show that (1) she is a member

of a protected class; (2) she was subjected to unwanted harassment; (3) the harassment was based

on her membership in the protected class; (4) the harassment unreasonably interfered with her work

performance, creating a hostile work environment; and (5) the employer is liable.  *See Clay v. UPS,*

*Inc.,* 501 F.3d 695, 706 (6th Cir. 2007).

A hostile work environment claim will lie only where "the workplace is permeated with

discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the

conditions of the victim's employment." *Harris v. Forklift Sys.* 510 U.S. 17, 21 (1993).  The

plaintiff must show both that a reasonable person would find the environment objectively hostile and

that the plaintiff personally found the conduct severe or pervasive. *Williams v. Gen. Motors Corp.,*

187 F.3d 553, 566-68 (6th Cir. 1999).  Offhand comments and isolated incidents, unless extremely

serious, will not amount to discriminatory changes in the "terms and conditions of employment."

*Hafford v. Seidner*, 183 F.3d 506, 512-13 (6th Cir.1999).  As to the final prong, "[a]n employer is

-16-

Case No. 1:08-CV-2006
Gwin, J.

liable if it knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action." *Id*. at 513.

Waiters does not provide sufficient details of the hostile work environment she alleges.  In her opposition to summary judgment, Waiters says she "endured threatening behavior on the part of the Defendant and its employees[.]  The Defendant and it[]s employees used every policy and any means possible to prevent and terminate the employment of the Plaintiff." [Doc. 18 at 2-3.] She also attaches a list of "examples" of the hostile treatment she allegedly faced. [Doc. 18, Ex. C.] This list includes three potentially severe incidents.[6/]  The remainder of the list items are more minor offenses or vague allegations.  Waiters provides no information on when these incidents occurred, making it impossible to determine how frequent or pervasive they were.

Even if Waiters has shown that she suffered harassment that unreasonably interfered with her work performance, she has not demonstrated that the City was liable for that hostile work environment.  Waiters asserts that the EEOC, the City, and Local 38 have files detailing the harassment against her, but "Not one statement or complaint Plaintiff made was ever addressed to the knowledge of Plaintiff.  Certainly the working environment never changed.  All these actions were initiated by Supervisory Personnel and expounded upon by fellow co-workers." [*Id.* at 3.] Further, she attaches the EEOC charges she filed, in which she asserts that she had "also made internal complaints concerning harassment against [her] by coworkers and certain management officials." [Doc. 18, Ex. D. at 2; *see also* Doc. 18, Ex. D at 11 ("I have made numerous complaints that I am being subjected to a hostile work environment and hostile co-workers.").] Waiters does not,

---

[6/]These more serious allegations are: "6. An Apprentice trying to push over a portable bathroom, with me in it. 7. Trapping me in a ceiling and trying to kiss and fondle me. . . . 11. A Journeyman sent me to work in a secluded area with nobody else around then he came to show me his penis and made advances." [Doc. 18, Ex. C.]

Case No. 1:08-CV-2006
Gwin, J.

however, attach any of these internal complaints that would have put the City on notice of the hostile

work environment.  Further, the Plaintiff provides no evidence as to when she made these complaints

to the City, through what forum, or about which incidents.  Without presenting this pertinent

information, the Plaintiff has failed to show a triable issue of fact as to the City's liability for the

alleged hostile work environment.  Therefore, the Court dismisses the hostile work environment

claim.

### D. Wrongful Termination

In her Complaint, Waiters alleges that the City "wrongfully terminated [her] on 06/08/07 for

violating Workplace Policies and Civil Service Rules 9.10.5, 9.10.9 and 9.10.18 for what amounted

to 'hearsay' from a non-employee away from the workplace and on Plaintiff's personal time at home.

The Defendant with malicious intent violated and breached the Defendant[']s policies, procedures

and Civil Service Rules." [Doc. 1 at 2.]

Under Ohio law, employment is presumed to be  at-will.  *Kusens v. Pascal Co., Inc.*, 448

F.3d 349, 366 (6th Cir. 2006).  Thus, "a general or indefinite hiring is terminable at the will of either

party, for any cause, no cause or even in gross or reckless disregard of any employee's rights, and a

discharge without cause does not give rise to an action for damages." *Collins v. Rizkana*, 73 Ohio

St. 3d 65, 67-68, 652 N.E. 2d 653 (1995).  However, Ohio recognizes a public policy exception to

the employment-at-will doctrine. "[A]n employer who wrongfully discharges an employee in

violation of a clearly expressed public policy will be subject to an action for damages." *Collins*, 73

Ohio St. 3d at 68.  While the presumption is that employment is at-will, "it is the affirmative duty

of the plaintiff seeking to recover under a public policy tort theory to plead and prove that he was

an at-will employee." *Kusens*, 448 F.3d at 366; *see also*, *Haynes v. Zoological Society of Cincinnati*,

-18-

Case No. 1:08-CV-2006
Gwin, J.

73 Ohio St. 3d 254, 258 652 N.E.2d 948 (1995).  Waiters does not plead that she was an at-will employee, so she cannot benefit from the Ohio public policy exception.

In fact, Waiters suggests that she was not employed at-will, by alleging that the City violated the Collective Bargaining Agreement by terminating her.  [Docs. 1 at 2.]  The City acknowledged this agreement in the arbitration proceedings.  [Doc. 15, Ex. D at 6-7.]  However, Waiters has presented no evidence on the Collective Bargaining Agreement's requirements for termination.  This Court cannot determine whether the City wrongfully terminated Waiters under the Agreement if the Court does not have the terms of the Agreement.[7]  Thus, Waiters has insufficiently demonstrated that her termination required just cause.

Because Waiters has neither established wrongful discharge in violation of public policy under Ohio law nor a just cause requirement for her termination, the Court grants summary judgment to the Defendant on the Plaintiff's claim of wrongful termination.

## IV.  Conclusion

For the foregoing reasons, the Court **GRANTS** the Defendant's motion for summary

---

[7]The record before the Court contains neither the Collective Bargaining Agreement nor the Arbitrator's award. Waiters says in her Complaint that "[t]he Defendant with malicious intent violated and breached the Collective Bargaining Agreement and ignored the determination and award of a mutually agreed upon Arbitrator in regard to Plaintiff's termination and reinstatement of employment, and took adverse action in implementing further disparate treatment by requiring unprecedented medical evaluations before being allowed to return to work."  [Doc. 1 at 2.]  This Court cannot find that the City has violated either the Collective Bargaining Agreement or the Arbitrator's award without Waiters presenting the content of these to the Court.

Case No. 1:08-CV-2006
Gwin, J.

judgment and dismisses the Plaintiff's claims with prejudice.

      IT IS SO ORDERED.


Dated: August 25, 2009                 s/        *James S. Gwin*
                                                      JAMES S. GWIN
                                                      UNITED STATES DISTRICT JUDGE